THE PEOPLE *ex rel.* GARRET M. CLUTE and others, Appellants,
   *v.* CHARLES E. BOARDMAN and others, Respondents.

SUMMARY PROCEEDINGS TO RECOVER POSSESSION OF LAND; REQUISITES OF AFFI-
   DAVIT IN; AFFIDAVIT OF SERVICE IN; STRICT COMPLIANCE WITH STATUTE IN.
   PRACTICE. CODE OF PROCEDURE. APPEAL. SPECIAL PROCEEDINGS. JURISDIC-
   TION OF COURT OF APPEALS. CASES COMPARED AND OVERRULED.

Summary proceedings to recover possession of land, are special proceedings
   within the meaning of section 11 of the Code, and an appeal to this court
   from the judgment of the Supreme Court reviewing such proceedings is
   properly taken, and is within the jurisdiction of this court to hear and
   determine.

The cases of *Matter of Dodd* (27 N. Y. 632) and of *The People ex rel. Har-
   vey et al.* v. *Heath et al.* (20 How. Pr. 304), which limit special proceedings
   to those cases which are litigated in courts, thereby excluding those
   instituted before a judicial officer out of court, seem not to be in accord
   with the prevailing practice of the courts, nor founded upon any solid
   basis of reason. MASON, J.

The tenor of section 6, of chapter 828, Laws of 1868, is an intimation that
   appeals in proceedings of this nature were authorized by previously ex-
   isting statutes; but if there were any doubt about it, the act itself renders
   valid all pending appeals in such cases, and authorizes the bringing of
   such in the future.

Where the affidavit which is the foundation for summary proceedings to
   recover possession of land, does not show that the premises are situated
   within the jurisdiction of the officer before whom the proceeding is insti-
   tuted, it fails to confer jurisdiction upon him, and recitals put into the
   summons will not cure the defect.

Where the service of the summons in these proceedings is sworn to as
   being upon a date prior to that of the summons itself, the variance is
   fatal; it is not a mere clerical error that may be corrected, for it leaves
   the case without any proof as to the time of service, and, if accepted,
   would give possible effect to an illegal service.

The omission in such affidavit to show that the place where the service was
   made upon the tenant, was his last place of residence is likewise fatal to
   the validity of proceedings affected by it. (*People ex rel. Simpson* v. *Plate,*
   42 Barb. 116.)

In the use of this remedy parties must be held to keep strictly within the
   pale of the law, and conform their proceedings strictly to the demands of
   the statute, if they expect to have their proceedings sustained.

THE appellants rented from the respondents certain prem-
ises in Eighth street, New York, being portion of well
known premises called the Neptune iron works, for a term

of three months from the 1st September, 1866. This term expired on the 1st December, 1866, and the tenants continuing to hold over, the landlords, on the 21st December, 1866, applied to the city judge of the city of New York for a summons under the statute, and no one appearing in answer to said summons, the city judge, due proof being made to his satisfaction of the service of the summons, rendered judgment in favor of the landlords, and issued his warrant accordingly.

The appellants, on the 23d January, 1867, sued out of the Supreme Court a writ of *certiorari*, upon the return of which the case was heard at General Term, and the proceedings before the justice affirmed.

The relators claim to have perfected an appeal from this affirmance to the Court of Appeals.

*T. J. Clute*, for the appellants.

I. The affidavit upon which the summons was issued by the city judge, of the city of New York, is insufficient, uncertain, and defective.

1. It does not show that the premises were situate in the city of New York. It describes them as the "brass foundry in the centre of the Neptune iron works, foot of Eighth street, East river." From such description the court can as well presume the premises to be in Brooklyn as in New York. The premises must be so described as to appear to be within the city of New York, or the city judge acquires no legal right to issue a summons. The statute vests the power of removal in the recorder, etc., and in the city judge (N. Y. Laws, 1850, chap. 205) of the city, where such premises are situated. The fact that the summons attempts to give a more specific description, so as to bring the premises within the officer's limits, cannot aid the landlord nor confer jurisdiction. (*Campbell* v. *Mallory*, 22 How. 187; *Duel* v. *Rust*, 24 Barb. 438.)

2. It purports to show that the term of the tenants had expired, but its phraseology is contradictory. It states that

on, or about the 1st day of September, 1866, the premises were rented to the tenants for the term of three months from the first day of September, then next, thus clearly indicating that the term did not commence until. the 1st of September, 1867, and therefore that it could not have expired on the 21st of December, 1866, the date of the jurat.

3. The holding over, if any, should be against the consent of all the landlords. If any one of them consent it must be construed as the consent of all, as the statute contemplates that all shall join in the application for the tenant's removal. (2 R. S. original paging 513, § 29.) The affidavit alleges that the tenants continue, etc., in possession without the permission of the said landlord. This allegation is not inconsistent with a holding over by consent of the other landlord. It is evident that an ejectment will not lie by one of two or more joint tenants, or tenants in common against a party in possession. A complaint in such a case could be demurred to, under the fourth subdivision of section 144 of the Code. All the owners must be joined, either as plaintiffs or defendants (§ 119 of the Code; *Griffen* v. *Clark,* 33 Barb. 46); and these proceedings are to all intents an ejectment suit.

4. The affidavit purports to be made by Boardman individually, but is subscribed and sworn to by him as assignee for Boardman, Holbrook & Co.

This is a fatal defect. Section 29 of the Revised Statutes provides that any landlord, lessor, or their legal representatives, agents or assigns may make the affidavit. Now, it is impossible to say whether this affidavit is legally made by Boardman as landlord, or as assignee of the landlord. The inference is that the original lessors assigned the term to Boardman, Holbrook & Co., and that they assigned the same to Boardman, but these facts should be distinctly stated and not left to inference (6 Hill, 316). In the case of *Cunningham* v. *Goelet* (4 Denio, 72), one Henry described himself in the body of the affidavit as "agent of the landlord." Judge BRONSON, vacating the proceeding, said: "Although Henry, in his affidavit, describes himself as agent for Goelet, he does

not swear that he was such agent." The subscription to the affidavit by Boardman, assignee, etc., cannot be rejected as surplasage, because thereby he has brought himself within one of the classes of persons authorized by statute to institute these proceedings, viz., assigns. (*Hill* v. *Stocking*, 6 Hill, 317; *Minie* v. *Burling*, 32 Barb. 541; *Wiggin* v. *Woodruff*, 16 id. 474.)

5. No indictment could be sustained on this affidavit, because, if the gravamen were illegal, as that Boardman made the affidavit as landlord, his signature, he being assignee, etc., would ignore and disprove the allegation. And on the other hand, if alleged that he made the affidavit as assignee, the objection would lie, that, although he described himself as assignee, he did not swear that he was assignee. (Vide 4 Denio, 72, *supra*.) And the true test of the validity of an affidavit is that an indictment can be predicated thereon.

6. If the landlords are tenants in common, the affidavit must be made by all; or if made by one, it must appear that he is authorized to make the same on behalf of his co-tenants. If the tenancy is joint it should so appear, as in that event one joint tenant could probably make the affidavit a joint tenancy, being a seizing "*per my et per tout.*" The words, "any landlord," etc., in the 29th section, must be construed in a collective sense, and therefore mean that all the parties in interest must join in the application, and must make the affidavit, etc. (*Griffen* v. *Clark*, 33 Barb. 46.)

II. The summons is defective and void, because it does not correctly recite and follow the description and phraseology of the affidavit.

1. Section 30th of the act alluded to, prescribes that the officer to whom the application is made, shall issue his summons, describing the premises of which the possession is claimed, etc. It is evident that a literal transcript of the sworn description, is here required, nothing less and nothing more. But the summons in this case did recite more. It recited that the premises were in the city of New York,

which the affidavit did not state. (*Duel* v. *Rust*, 24 Barb. 438; *Campbell* v. *Mallory*, 22 How. 187.)

2. It also recited that Boardman rented the premises on the first day of September (in which year does not appear), for the term of three months, and afterward it is stated for the term of three months, from the first day of September then next ensuing. It is quite out of the question to make out from this recital and statement the beginning or end of the term, and again it differs essentially from the phraseology of the affidavit.

III. The alleged service of the summons was irregular and void.

1. It should have been made as provided by the 32d section of the act (2 R. S. 514, as amended by chap. 684, Laws 1857), viz.:

*Firstly.* By delivering a true copy thereof to *each* of his tenants personally, and at the same time showing him the original, and, in case such personal service cannot be made by reason of absence, then,

*Secondly.* By leaving a true copy thereof for each of the tenants, at their respective last or usual place of residence, with some person of mature age, residing at such their last or usual places of residence, and if there was no such person residing there, then such service may be made by affixing such copy upon a conspicuous part of such demised premises. (2 R. S., Edmonds' ed., 530, § 32; 2 R. S., 514, old paging, § 32, as amended, Laws 1857, chap. 684; *People ex rel. Simpson* v. *Platt*, 43 Barb. 116.)

The service of the summons therefore cannot be made on any person on the demised premises other than the tenants, unless the same were also the last or usual place of residence of such tenants.

The affidavit of Boyle shows that service thereof was made on 20th December, 1866, by leaving a *true copy* of the summons with a third party (neither of the tenants), who is described as a person of mature age and discretion, who at the time of such service was on, and who resided upon, the premises described in the summons; that at the same time

the original was shown. Boyle further states, that the said tenants were then absent from the said premises, and that the same were his (*i. e.* the person on whom service was made), last or usual place of residence.

2. All the *aliunde* facts in the case tend to the conclusion that Boyle did not intend to swear, that the premises in question were the place of residence of the appellants, but that he did intend to swear that the person on whom he served resided there.

Because the premises were a brass foundry in the center of the Neptune iron works, a place entirely unsuited for the residence of three persons.

It is a fair presumption that the iron works were in operation at this time, and the manufacture of iron in its various branches was being prosecuted therein, and common observation and experience demonstrate that such a place is unfitted for a residence.

Indeed, it would be quite impossible for three persons to reside in the center of an iron foundry, amidst the surrounding din, noise, smoke and confusion; on the other hand it is always customary for large manufacturing establishments in a city to employ one or more persons as watchmen, and he or they may be so domiciled in and about such premises, as that in one sense, they may be said to reside thereupon, particularly if they are unmarried men.

The person served by Boyle may have been one of this class of persons, employed by the Neptune iron works, as above alluded to.

Again, Boyle should have left three copies of the summons, one for each of the tenants: he swears that he left but one copy of the summons. (R. S., § 32, *supra*, sub. n. 1; *Hill* v. *Stocking*, 6 Hill, 316.)

IV. The date of the service of the summons as sworn to is on the 20th December, 1866, which is anterior to the date of the jurat to Boardman's affidavit 21st December, 1866, and before the actual issuing of the summons 22d December, 1866, and the issuing of the warrant of removal was therefore unauthorized.

1. Because the service purports to be on the 20th of December, 1866, two days before the issuing of the summons.

2. The city judge had, therefore, no evidence before him as to the actual time of service, and it is essential that the summons should have been served so as to allow one day to intervene between the service and the return day of the summons, as provided for by chapter 754, Laws of 1866, section 1, which enacts that such summons shall not be returnable before the day following its service, except that when said term expires on the 1st day of May (not this case), in which event the summons may be returnable on the same day.

3. This defect is fatal, and is not now amendable. The city judge has no power to assume that the summons was served on any particular day. Section 33 of the statute requires that due proof of the service of such summons be made to him, which most assuredly means a written affidavit thereof, or at least an official certificate of such service. The first mentioned proof by affidavit, has been furnished, which is fatally defective, and it is confidently submitted that neither the city judge nor any appellate tribunal can assume that the service was actually made on the 22d of December, 1866 (Saturday), which is the only day on which the service would be valid, for the reason that if the service were assumed to be on Sunday, 23d, it would be invalid, as that day is *dies non*, and if assumed to be on Monday, 24th, it is void, as not allowing one day to intervene, as provided by chapter 754, Laws of 1866, above quoted. (*Tibley* v. *Waffle*, 16 N. Y. 180.) No indictment can be sustained on this affidavit.

4. Because, if the indictment alleged that the service was sworn to as having been made on the 20th of December, 1866, the indictment could be quashed, on the ground that the service was alleged to have been made before the issuing of the summons, which would be chronologically impossible, and if alleged to have been made on any other day between the issuing and return of the summons, such allegation would be disproved by the affidavit itself, which fixes the day of

service on the 20th of December, 1866, and there is no power in any court or tribunal to legally establish any other day of service, so as to make the affiant amenable to a criminal prosecution thereupon. So that, in point of fact, there may have been no service whatever made of the summons, or it may have been illegally made on the 24th of December, 1866, the day of the return thereof, and unless the appellants succeed in reversing these proceedings, they are entirely remediless, as they have had no opportunity to appear and traverse the allegations of the affidavit.

5. The appellants ask that the judgment of the Supreme Court be reversed; that the affidavit, summons, warrant of removal and other proceedings before the city judge, be set aside and vacated, and that it be adjudged that they are entitled to restitution of the premises — with costs, and that the record be remitted to the Supreme Court, with directions to carry into effect the decision of this court. (Smith & Moffat, 1 Barb. 65; 2 R. S. 576, 348; Code, § 12.)

*I. T. Williams*, for the respondents.

MASON, J. This matter comes before this court on appeal from the judgment of the Supreme Court, rendered upon the return to that court to a writ of *certiorari*, brought to review summary proceedings had before the city judge of the city of New York, under the landlord and tenant act. The proceedings were affirmed, and the relator appealed therefrom to this court. The point is taken *in limine*, that an appeal to this court will not lie in such a case. The 11th section of the Code provides, that the Court of Appeals shall have exclusive jurisdiction to review, upon appeal, every actual determination made at the General Term of the Supreme Court, in a final order affecting a substantial right in a special proceeding. This seems very clearly to embrace the case. It certainly does, if these summary proceedings to remove a tenant are to be regarded as a special proceeding under the Code. The opinion was expressed by Judge DENIO, in passing, in delivering the opinion of the court *In the matter of Dodd* (27 N. Y.

632), that to be a special proceeding, in the sense, of the Code, there must be a litigation in a court of justice, — citing the first section of the Code.

This section, in defining remedies, seems to give some countenance to such a construction. It says: "Remedies in courts of justice are divided into actions and special proceedings." This narrow construction would allow no special proceeding, instituted before a judicial officer out of court, to be regarded a special proceeding under the Code, and, consequently, this 11th section, providing for appeals, would not reach such cases.

The same view was taken by Judge MARVIN, of the Supreme Court, in *The People ex rel. Harvey and others* v. *Heath and others* (20 How. Pr. 304–307). The Code is entitled, "An act to supply and abridge the practice, pleadings and proceedings of the courts of this State," and is, upon the plainest construction, limited to proceedings in the courts.

The proceedings, after they come into the Supreme Court, are to be regarded as a special proceeding in that court, and so when the proceedings are brought into this court. Suppose, in the case before us, the decision of the city judge had decided against the landlords, and they had removed the proceedings into the Supreme Court, would they not have been seeking a remedy in that court in a special proceeding? And suppose again, they had been beaten in the Supreme Court, and had appealed to this court, would they not have been seeking a remedy in a special proceeding in this court? The case is not different that these appeals have been taken by the relator, for the respondents are seeking their remedy by the resistance they make to this appeal.

It is not necessary to discuss the question, and I will only add, that I have looked carefully into the adjudged cases, and find that this distinction made by Judge DENIO and Judge MARVIN, does not seem to have been observed by judges generally, and there is no reason for placing so limited a construction upon this first section of the Code. The general understanding, I think, has been different, and there is a clear legislative intimation in chapter 828 of the Laws of 1868,

section 6, that an appeal to this court, in just such a case as this, was authorized as a matter of right before the passage of that act. The preceding section declares, that the judgment of the Supreme Court at a General Term upon such a *certiorari* shall be final, unless an appeal shall be allowed by the General Term before the end of the term next after that at which the judgment was rendered. Then follows the sixth section, which enacts "That nothing contained in this act shall prevent an appeal to the Court of Appeals from any judgment heretofore rendered by the Supreme Court, upon a *certiorari* awarded pursuant to section 47, title 10, chapter 8, part 3, of the Revised Statutes, provided that such appeal *has already been taken* or shall be taken, within one year after the passage of this act." This act goes further. It renders valid all pending appeals in this court in just such cases as this.

If there is any validity in the statute, the appellant is *rectus in curia* on this appeal, and there can be no doubt as to the power of the legislature to pass such an act, which simply regulates the proceedings enforcing a remedy. The right to abolish appeals and substitute a writ of error, and *vice versa*, has never been doubted, and to conform the proceedings of the one to the other in pending suits is equally clear.

These proceedings should be reversed for several reasons: In the first place, the affidavit presented to the city judge, and which was the foundation of the proceedings, was so defective, it did not confer jurisdiction upon the officer. It fails to show that the premises were situated in the city of New York, which is essential to give the city judge jurisdiction.

The recitals put into the summons by the judge when he issued the same, do not cure this defect. The affidavit of Doyle as to the service of the summons, is so fatally defective that no jurisdiction to proceed further in the matter was conferred upon the judge. The affidavit of Boardman, the landlord, upon which the proceedings were instituted, purports to be sworn to on the 21st of December, 1866, and the summons is dated on the 22d of December, and

Doyle swears in his affidavit, that he served the same on the 20th of December. It is said, this is a palpable mistake as to date, that he could not have served it on that day, for the summons was not then issued, and, consequently, he could not have served the original on the 20th of December. If this were granted, it only proves that the summons was not served on the 20th, and that the affidavit is wrong in this respect. We are thus left without any proof when it was served, except that it appears to have been sworn to on the 24th, the return day of the summons. The service may then have been made on that day, and only a few minutes before the return thereof, which certainly would be most unreasonable if not illegal.

There is, however, another fatal defect in this affidavit: it fails to show that the last place of residence of these tenants was at this brass foundry, where the service was made, by leaving a copy with a person of suitable age. This is a fatal defect. (*The People, ex rel. Simpson,* v. *Platt,* 42 Barb. 116.) The party who uses this quite severe and summary remedy, by serving the summons the hour it is returnable, by leaving a copy with some stranger in interest, and then, as is frequently done, run with a break-neck speed to the judge, and have a default taken, and the warrant issued to the officer to deliver possession, before the tenant can get there if he learns of the proceedings, must be held to keep strictly within the pale of the law, and conform his proceedings strictly to the demands of the statute, if he expects to have his proceedings sustained. These proceedings should be reversed with costs, and the record remitted to the Supreme Court, with directions to carry into effect this judgment.

Judgment reversed.